WILLIAM LLOYD v. ELIZABETH NEWELL, who has survived JAMES NEWELL, Executrix of HUGH NEWELL, dec.

*A verdict rendered without evidence will be set aside.*

Upon the first trial of this cause, before JUSTICE FORD, a verdict was rendered for the defendant which afterwards at the instance of the plaintiff was set aside and a new trial ordered. A second trial took place before JUSTICE ROSSELL, and a special jury, at the Monmouth circuit in April, 1825, and a verdict was found for the plaintiff. The defendant obtained a rule to shew cause why this verdict should not be set aside, which was argued at the present term by *Wall*. and *Wood*, for the defendant, and by *R. Stockton* for the plaintiff.

The court made absolute the rule and ordered a new trial on payment of costs.

JUSTICE ROSSELL, declared himself entirely satisfied that the jury had drawn erroneous conclusions in point of fact from the proofs before them, and that the verdict was without evidence to sustain it. He had expected on the trial a different result, and was surprised when the verdict was rendered. The former verdict had been set aside, not as intimated at the bar, because the court on the argument of the rule to shew cause had been satisfied of the right of the plaintiff to recover his claim, but from the subsequent discovery by the plaintiff of certain written documents which were alleged to deserve an important influence on the matter in controversy, and from the nature of the cause, the court thought it proper another investigation should take place.

JUSTICE FORD, expressed himself to the same effect as to the ground on which the former verdict was set aside, and

that he considered the present verdict to be without evidence and that a new trial ought therefore to be granted.

Ewing, C. J. This action was brought to recover a balance alleged to be unpaid of the purchase money of a farm sold by the plaintiff as executor of Kenneth Hankinson, deceased, to Hugh Newell, the defendant's testator. The plaintiff by the receipt contained in the deed which he made for the farm, acknowledged the payment of the whole of the purchase money, and thereby imposed on himself the necessity of shewing in this suit not only that the purchase money, or the balance now claimed, was originally due, but also that this balance remains unpaid. The receipt in the deed is not conclusive; it does not preclude inquiry; it does not bar peremptorily the plaintiff from recovery; but it is *prima facie* evidence, and imposes in the party who gave it the duty of proving what may be called negative matter, and obliges him to remove whatever may exist of doubt or difficulty.

In this case he has undertaken to do so. Has he done it? He shews by an instrument of writing that on or after the 22d October, 1812, upon a calculation made between him and Hugh Newell, it appeared that Newell had somewhat overpaid the purchase money, including a receipt of Andrew Bell, for $250. He shews satisfactorily, that in that calculation or adjustment he allowed to Newell the sum of $250, contained in that receipt. He farther shews that the $250 were handed by Newell to Bell, to be paid to Robert Boggs, as attorney for John Rutherfurd, in discharge of a bond given by Newell himself, in lieu of part of a debt originally due from Hankinson to Rutherfurd, on account of which any payments made by Newell were to have been accepted by Lloyd as payment of so much of the purchase money. In the writing exhibited which shews the statement or adjustment I have mentioned, it appears that Newell was so to regulate that receipt as that Lloyd might have credit for

the amount of it in the settlement in the Orphans' Court of his accounts as executor. The plaintiff then shews by the account in the Orphans' Court, that he had credit for the amount due and paid on the original bond or debt to Rutherfurd and no more. He then calls on the defendant to shew that the receipt was so regulated as that credit was obtained for it, and insists that as the defendant has not done so, he is entitled to recover. But, I think, not so. Having acknowledged the receipt of the purchase money in the deed, it was on him to shew that it was not so regulated, and that he had not credit in the Orphans' Court account for the $250. Let us examine if he has shewn it. He has obtained, it is seen, credit for the full amount of the principal and interest of the original Rutherfurd debt or bond; and he has thus obtained credit, and the estate of Hankinson is charged in the Orphans' Court account, for all he ought to have credit for and the estate to be charged with. Still the question recurs. Has he obtained credit for the $250 allowed in the adjustment with Newell? Now it is manifest this question entirely depends on what items were allowed to Newell in that adjustment. And the plaintiff in order to shew that Newell had credit for $250 in that adjustment more than he should have been credited, ought to have shewn what items were brought into view and allowed. If the amount of the original Rutherfurd bond, $498.51, and the $250 were both allowed, then it is clear that Lloyd credited in the adjustment $250, which had not been paid for him, in other words, which he had not received, and he ought now to recover it. But if the several sums actually paid by Newell to Boggs, the attorney of Rutherfurd, that is to say, the $167.43, and the $32.71, and the $80, and the $250 were alone credited, then all is right. It is not enough to shew that the $250 were credited, because that sum may have been rightfully credited. Whether rightfully credited was a relative question. Its propriety or impropriety depended on the other items which were

credited with it. . Of these other items the plaintiff gave no evidence. It was said at the bar, the original Rutherfurd bond and the receipt endorsed by Boggs as his attorney upon it, were produced and present at the time of the adjustment between Newell and Lloyd, and hence the jury had just and sufficient ground to infer that the amount of that receipt was allowed to Newell as well as the $250. There is, however, no witness who testifies that the bond and receipt were produced. But if there be sufficient to raise the presumption that the bond and receipt were produced, it would be an extraordinary inference that both the amount of the receipt and the $250 had been allowed, when the receipt is for the full amount of the original bond, and on the face of it declares that part of its amount was paid by a bond given by Newell to Rutherfurd in lieu of such part, and when the $250 were to be paid by Bell to Boggs in discharge of that new bond.

The verdict appears to me to have been without evidence, and ought therefore to be set aside.